This case came up on exceptions to the commissioner’s report. I understand the bill to have been by one tenant in common, against another in possession, for rent.
Complainant’s exceptions : 1st. This exception is misconceived. The testimony of the witness referred to, though not embodied in the report, accompanied it, and was read. If it is meant that the commissioner ought to have been governed by it, I suppose the commissioner chose to follow the witness who lived on the land, and might be supposed best to know its value ; but I cannot say that he was wrong in doing so. Besides, I think the testimony is probably misunderstood, and that the witness, Woodward, only valued the new land at $2 per acre. The exception is therefore over-ruled.
2nd. Exception. I perceive no ground for this exception. The witness states that Devlin cultivated fifty acres of land, the first year, and ten or twelve the second. There is no evidence of his having cultivated any other than the new land the third year, which is charged separately. In his second examination, the witness values the fifty acres at 50 cents per acre. In his first. examination, he may mean that the ten or twelve acres are worth one dollar per acre, and it is charged accordingly, The exception is over-ruled.
I shall consider the 3d, 4th and 5th exceptions, when I consider the defendant’s 1st. exception.
Complainants 6th exception must be sustained. Interest -is payable on rent, from the time it is due, and is always allowed in this court.
Defendant’s exceptions. I shall consider the complainant’s 3d. 4th and 5th and defendant’s 1st. 2d. 3rd. and 7th. exceptions together. They relate to the principles on which one tenant in common shall be compelled to account to another for his share of rents and profits. As I understand the report and the testimony, there was a large tract of land containing upwards of eight hundred acres, of which, between three and four hundred acres were cleared *76 for cultivation. Defendants, tenants in common with, complainants, took possession of this land, and cultivated all the cleared land. They also caused to he cleared, some seventy acres, or more, which was cultivated two years, and putup a cotton screw, estimated to he worth $100, which is supposed to have enhanced the price of the land, when it was afterwards sold. The commissioner has charged the defendants with the rent of the land which was cleared for cultivation, when they took possession of the land cultivated by them: and also with the rent of the land cleared hy them, for the time they cultivated it: and he has given them credit for the value of the improvements made hy clearing the land and putting it in order for cultivation, and putting up the cotton screw. It is excepted that defendants are not chargeable with any rent, as they did not receive rent, hut occupied the lands themselves; and because they did not occupy and use more than their proportion of the whole quantity of the land. It is excepted that defendants ought not to have been charged with the rent of land cleared hy themselves ; and on the other side, that they ought not to have been credited for the expense of the improvements.
I am of opinion that defendants ought to be charged with the rent of land, estimated as it was when they took possession of it, and are not to be charged with the rent of the newly cleared land, or credited for improvements. There is nothing, I think, in the objection, that defendants did not receive rent, but cultivated the land themselves. To cultivate and have the use of lands, is to receive the rents and profits, though the occupier is his own tenant.
Real property is so differently circumstanced in England from what it is in this country, that we may expect difficulty in applying the rules of the English law to the cases which arise here; yet we have no other law on the present subject. By the common law, one joint tenant or tenant in common, had no remedy against his co-tenant, who had received the whole of the rents and profits, until the Sta-sute 4<fe5 Anne, ch. 16, sec. 27. An action of account was given against the tenant who had received more than Ms share. 2d Cruise Dig. 407-526. The shares of joint ten *77 ants and tenants in common, axe prima facie, equal. How is it to be determined whether one has received more than an equal share 1 If the whole estate were let to tenants, and certain rents reserved, as is commonly the case in England, there would be little difficulty. But what rule shall be adopted when one tenant in common has occupied part of the premises himself 1 I know of no other, than to estimate the rent of the whole premises, and then to value the rent of that portion of the premises occupied by the tenant in possession, with reference to the condition they were in at the time he took possession. In this case, I understand the defendants to have cultivated the whole of the land that was cleared for cultivation at the time of the intestate’s death. The rent of land in this country, is generally estimated with reference to the cleared land, in order for cultivation ; enhanced, it may be, by the advantages afforded by the annexed woodland: and it would seem to follow that the defendants have received the whole of the rents and profits.
It was objected in argument, that the defendants did not occupy more than half the whole quantity of land. There was woodland, which the complainants might have cleared and cultivated if they thought proper. It was also objected that there may be other sources Of profit, than from the cultivateable land ; as if there were a mine in operation, or a mill on the premises: or profit might be made from selling timber. It is to be observed, that according to the English law, the tenant in possession has no right to cut down timber, or clear woodland for cultivation, and if he does so, it will be waste. This may seem unsuitable here, but perhaps it will not work badly in practice. If there were a mine or mill in operation on the land, capable of producing rent, or any similar source of profit, the value of this would be taken into calculation in estimating the rent for the whole premises.
If there was no account at common law, as between joint tenants, and tenants in common, it seems clear that one tenant could not charge the other for improvements put by him upon the land. One man has no right to improve the land of another at the owner’s expense.
But if the tenant out of possession is not to be charged *78 for a share of the improvements, it would be plainly inequitable that he should be allowed to claim the enhanced rent, produced by means of such improvements. If the tenant in possession should build a mansion on the land, or a mill, or manufactory, it would be enough that the co-tenant should take his share of the land, increased in value by these improvements, without charging the tenant, at whose expense they were constructed, with rent for the time they were used by him. To apply to the present case. If the premises were improved by the clearing and fencing of new land, or by erecting the cotton screw, the defendants have no right to charge for that. They had no right to make improvements at their co-tenants’s expense, without their consent. But they are not to be charged with the rent of the land cleared by them, because the premises were rendered capable of producing that rent by means of their improvement. The clearing of the land, ■was waste ; but if the value of the whole premises was improved lay it, the complainants would only recover nominal damages at law. If the value hadbeen deteriorated, damages might have been recovered according to the injury. If, as suggested, a tenant in possession should make profits by selling timber or tan bark, I suppose his co-tenant might recover his share of those; not as on an account for rent and profits, but as waste. Complainants’s '3d. and defendants’s 1st. and 2d. exceptions are therefore over-ruled. Complainants’s 5th. and defendants’s 7th. exceptions are sustained. Complainants 4th. and defendants 3d. are disposed of by the decision on the other exceptions.
Befendants’s 4th exception is over-ruled. Ambrose Gibson says in his testimony, he “speaks of the Bostick land, purchased after Scott made his will,” and I understand ali the witnesses to speak with reference to the same land.
5th. exception. It does not appear from any of the testimony before me, whether the deceased, William Scott, died ■before or after the first of March. I must suppose that it appears in some of the proceedings, and that the commis-missioner was warranted in deciding the crop of that year not to have been emblements.
• 6th. exceptions, The testimony is not very distinctly *79 reported. The testimony of Gibson, as it appears on the commissioner’s notes, is that when he went to the place, “ there were 122 acres of cleared land.” He speaks of other parcels of land, and adds, “ witness cultivated the land, till it was sold.” This exception is over-ruled.
Desaimwe, for the motion,
Mr, Gregg, contra.
Ordered that the report be referred back to the commissioner to be modified according to .the directions herein before given.
The defendants move to reverse oi modify the decree.
1. Because the defendants were not liable to account for their cultivation.
2. Because complainants had more than one-fifth of the cleared land to cultivate if they chose, and defendants did not cultivate more than their share.
3. Because the report and decree are in error as to the amount cultivated each year.
4. Because the crop of the first year was emblements and belonged to the executor.
5. Because defendants are not chargeable for the rent of the land they cleared.
Appeal determined, May Term, 1831.